A.E., Jr., a minor, by Parent and Next
Friend, KIANNA REED,

                Plaintiff

v.

RACINE COUNTY, a body politic and corporate,
ROBERT KNIGHT, individually, and
JORDAN KNIGHT, individually,

          Defendants.

**COMPLAINT**
Civil Action No.
[Trial By Jury Demanded]

## I.  <u>INTRODUCTION</u>

1.      This is a civil rights action brought by A.E. Jr., a minor, by parent and next friend, Kianna Reed. A.E., Jr. (hereinafter "A.E.") suffers from emotional and psychological disabilities. On May 27, 2025, safety and security coordinators employed by Racine County at the Jonathan Delagrave Youth Development and Care Center failed to make efforts to de-escalate a situation where A.E. became emotionally dysregulated. Instead, the safety and security coordinators egged A.E. on and threatened him, thereby escalating the situation. Safety and security coordinators then physically attacked A.E., subjecting him to excessive force in violation of his Eighth Amendment rights. Audio and video recordings of the escalation and altercation captured the safety and security coordinators egging A.E. on, their failure to de-escalate, and their subsequent brutal beating of A.E. by using closed fists, knees, and elbows and by throwing him to the ground. At no point during the incident did A.E. punch, kick, or otherwise attempt to injure the defendants.

## II.  <u>JURISDICTION & VENUE</u>

2.      This action arises under 42 U.S.C. § 1983. Jurisdiction is conferred by 28 U.S.C. §§ 1331 and 1343(a)(3) and (4).

3.      Venue in this district is proper under 28 U.S.C. § 1391(b)(2) because the conduct giving rise to plaintiff's claims occurred in this judicial district.

### III. <u>PARTIES</u>

4.      A.E. at all relevant times, was a disabled, minor resident of the Jonathan Delagrave Youth Development and Care Center (hereinafter "JDYDCC"), located in Racine County, Wisconsin. A.E.'s mother and next friend, Kianna Reed, is a resident of Racine County, Wisconsin. A.E. was released from JDYDCC on April 9, 2026.

5.      Racine County is a municipal corporation, organized under the laws of the State of Wisconsin. Racine County is a "person" for purposes of 42 U.S.C. § 1983 and a "public entity" under 42 U.S.C. § 12131(1). Racine County owns and operates the JDYDCC. Pursuant to Wis. Stat. § 895.46(1)(a), the County is required to pay or indemnify all judgments, including for compensatory and punitive damages, attorneys' fees, and costs that may be awarded against its officials and employees. Racine County is being named for purposes of indemnification.[1]

6.      Robert Knight was a safety and security coordinator with the JDYDCC. At all relevant times hereto, he acted under color of state law and within the course and scope of his employment as an employee of Racine County, and he is sued in his individual capacity. Robert Knight is no longer employed with the JDYDCC.

7.      Jordan Knight is a safety and security coordinator with the JDYDCC. At all relevant times hereto, he acted under color of state law and within the course and scope of his employment as an employee of Racine County, and he is sued in his individual capacity.

---

[1] *S.O. v. Milwaukee Cnty. Sheriff's Dept.,* 766 F. Supp. 3d 814, 825-26, n. 6 (E.D. Wis. 2025) ("an injured party may bring a direct claim for indemnification against the state or local government under § 895.46, at least when that direct claim is brought in the same action as the claim against the public officer or employee.") (citing *Martin v. Milwaukee Cnty.,* 904 F.3d 544, 547 (7th Cir. 2018) (fully adjudicated indemnification claim)); *see also Estate of Pesavento v. Rudebeck,* 2026 U.S. Dist. LEXIS 55872, *21 (E.D. Wis. 2026) ("In short, a plaintiff may pursue a direct action under Wis. Stat. § 895.46 when the indemnitor is a municipality but not when it is the state.").

2

IV.    **STATEMENT OF FACTS**

A.    **A.E.**

8.    A.E.'s placement in the JDYDCC as of May 27, 2025, stemmed from delinquency findings on one misdemeanor count of retail theft and one misdemeanor count of obstructing an officer.

9.    Prior to the events at issue, A.E. had been diagnosed with Disruptive Mood Dysregulation Disorder (DMDD), Attention Deficit/Hyperactivity Disorder (ADHD), developmental delay with speech with globally reduced intellectual functioning, and an unspecified bipolar disorder.

10.    At the time of the excessive force used against him, A.E. was fifteen years old.

B.    **May 27, 2025, Excessive Force**

11.    On the evening of May 27, 2025, while A.E. was spending time in the JDYDCC dayroom, he became emotionally dysregulated due to one or more of his disabilities, and he began arguing with another JDYDCC resident.

12.    As a result, a JDYDCC employee requested assistance from safety and security coordinators to de-escalate the conflict.

13.    The JDYDCC employee who requested assistance from safety and security coordinators was aware that A.E. needed time to cool off when he would become emotionally dysregulated.

14.    Defendants Robert Knight and Jordan Knight responded to the dayroom, and they began to speak with A.E., who then willingly walked with Robert Knight and Jordan Knight to the intake area with no physical resistance.

3

15. Robert Knight was aware that at A.E. needed time to cool off when he would become emotionally dysregulated.

16. Jordan Knight was aware that at A.E. needed time to cool off when he would become emotionally dysregulated.

17. Fellow safety and security coordinators, Michael Quinones and Thomas Marzette, accompanied Robert Knight, Jordan Knight, and A.E. on the walk to the intake room.

18. Mr. Quinones was aware that A.E. needed time to cool off when he would become emotionally dysregulated.

19. Mr. Marzette was aware that A.E. needed time to cool off when he would become emotionally dysregulated.

20. A.E. complied with the directive to walk to the intake area.

21. During the walk to the intake area, A.E. was mouthing off to Robert Knight and Jordan Knight, who were both reciprocating by egging A.E. on, thereby escalating the situation while they were all walking to the intake area.

22. A.E. did not get physical with anyone during the walk to the intake area.

23. During the walk from the dayroom to the intake area, Jordan Knight was egging A.E. on and further escalating the situation by repeatedly telling A.E., no fewer than six times, to "keep playing with me dog."

24. Jordan Knight was knowingly escalating A.E.'s emotionally dysregulated state.

25. Jordan Knight made no effort to de-escalate the situation.

26. Robert Knight made no effort to de-escalate the situation.

27. During the walk from the dayroom to the intake room, A.E. repeatedly told Jordan Knight, "I'm not worried about you . . . I'm not scared of you."

4

28. Jordan Knight replied, "yes you is."

29. A.E. then told Jordan Knight that he would beat him up, but A.E. made no physical contact or aggressive moves toward Jordan Knight.

30. Once inside the intake area, Robert Knight got in A.E.'s face, pointed in his face, and screamed at A.E. to "stop making threats."

31. A.E. took off his shirt, but he did not become physical with the safety and security coordinators.

32. Robert Knight opened the door to a holding room and directed A.E. to enter the holding room to be locked down.

33. At the time that Robert Knight opened the holding room door and told A.E. to enter, A.E. was surrounded by Robert Knight, Jordan Knight, and Mr. Quinones; Mr. Marzette was close by.

34. Robert Knight stood in front of the holding room and repeatedly said "go ahead then" to A.E.

35. Then, without physical provocation or physical resistance from A.E., Robert Knight punched A.E. in the face with a closed fist.

36. Immediately after Robert Knight punched A.E. in the face, Robert Knight and Jordan Knight pinned A.E.'s arms against the wall, while Jordan Knight and Robert Knight continued to punch A.E. in his body and ribs.

37. Robert Knight continued to punch A.E. in his face and head with closed fists, and A.E. fell into a leaning position against one of the intake room chairs, where his attackers pinned him.

38. A.E. did not fight back, but he tried to shield himself from the repeated blows.

5

39. While A.E. was pinned against the chairs, Robert Knight delivered several closed-fist punches to A.E.'s head, and he also delivered multiple knee strikes to A.E.'s body.

40. Once the safety and security coordinators got A.E. onto the ground, Jordan Knight delivered several elbow strikes to A.E.'s ribs and back, and he also delivered a knee strike to A.E.'s head.

41. While the physical interaction was ongoing, the defendants, as well as Mr. Quinones and Mr. Marzette, were giving A.E. multiple, conflicting directives.

42. Mr. Marzette announced that conflicting directives were being given to A.E.

43. Robert Knight and Jordan Knight continued to give A.E. conflicting directives while continuing their attack on A.E.

44. In total, Robert Knight and Jordan Knight struck A.E. over twenty times with closed fists, knee strikes, and elbow strikes.

45. Jordan Knight had to be physically restrained to stop his attack on A.E.

46. The instance referenced in paragraph 45 is the first time that any JDYDCC employee physically intervened to stop the brutal beating of A.E.

47. Punches to the head and face can amount to deadly force[2] and were excessive and unjustified.

48. Concentrated knee strikes and elbow strikes to A.E.'s side, back, and torso were excessive and unjustified.

49. Although A.E. verbally resisted entering the safe room, he was not physically violent or resistant toward any of the safety and security coordinators, and he was never armed with any weapon.

---

[2] *Sallenger v. Oakes,* 473 F.3d 731, 740 (7th Cir. 2007).

50.     Robert Knight resigned following his use of excessive force against A.E. to avoid investigation of his conduct and actions.

## V.     STATEMENT OF CLAIMS

51.     Defendants Robert Knight and Jordan Knight violated the Eighth Amendment rights of A.E. by use of excessive force in the response to, at most, verbal resistance by a minor.

52.     The excessive force caused A.E. physical injury, pain and suffering, emotional distress and other damages.

53.     Because Robert Knight and Jordan Knight were acting within the course and scope of their respective employment, Racine County is liable for all damages, costs, and fees pursuant to Wis. Stat. § 895.46, Wisconsin's indemnification statute.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully demands a jury trial and prays that this Court:

1.     Enter judgment for plaintiff and against the individual defendants, awarding compensatory damages and punitive damages against the individual defendants.

2.     Award pre-judgment and post-judgment interest, together with costs, disbursements, and reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

3.     Award such other relief as may be just and equitable.

4.     Enter judgment against Racine County for indemnification pursuant to Wis. Stat. § 895.46.

Dated at Milwaukee, Wisconsin this 28th day of April, 2026.

FIRST, ALBRECHT & BLONDIS, s.c.
Attorneys for Plaintiff

s/ Thomas C. Lenz

_____

7

Thomas C. Lenz
State Bar. No. 1055135

s/ Bryn I. Baker

Bryn I. Baker
State Bar No. 1102534

Broadway Theatre Center
158 North Broadway, Suite 600
Milwaukee, WI 53202
Telephone: (414) 271-1972
Facsimile: (414) 271-1511
tlenz@fabattorneys.com
bbaker@fabattorneys.com

8